Filed 11/8/23; Certified for Publication 12/5/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EUNICES ARGUETA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WORLDWIDE FLIGHT SERVICES, INC., <br><br> Defendant and Respondent. | B306910 <br><br> (Los Angeles County Super. Ct. No. BC703825) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge. Reversed.

Matern Law Group, Matthew J. Matern, Debra J. Tauger, Joshua D. Boxer and Irina A. Kirnosova for Plaintiff and Appellant.

Howard & Howard and Robert L. Rosenthal for Defendant and Respondent.

After the jury returned a defense verdict in appellant Eunices Argueta's action for sexual harassment against Worldwide Flight Services, Inc. (Worldwide), she filed a motion for a new trial and a motion for judgment notwithstanding the verdict (JNOV).  The trial court denied both motions.  Argueta now appeals, contending the trial court's admission of evidence of the substance of other employees' complaints about her to Worldwide was erroneous and warrants a new trial.  She also contends there is no substantial evidence to support the jury's finding that Worldwide employee Dzung Nguyen's acts of sexual harassment were not severe or pervasive.[1]  On these grounds she contends a new trial or a finding in her favor is required.  We agree admission of the substance of the complaints against Argueta was prejudicial error and reverse the trial court's denial of her motion for a new trial.  Accordingly, we need not and do not consider her JNOV motion.

## BACKGROUND

Argueta began working at Menzies Aviation, a freight operations company in El Segundo, California, in 2008 when she was 18 years old.  From about 2008 to 2014, Argueta and Dzung Nguyen (Nguyen) worked for Menzies at a location near Los Angeles International Airport.  In October 2014, Worldwide acquired Menzies; Argueta and Nguyen continued to work for Worldwide.  Argueta was a lead agent in the import department; her supervisor was Sonia Flores.  Nguyen worked as their

---

[1]    Nguyen was originally named as a defendant in this action, but before trial the parties stipulated to dismissing him.  Argueta's complaint alleges the sexual harassment started in 2016 and continued through 2017.

manager. When Flores was not present, Argueta worked as the acting supervisor and oversaw the work of other agents.

In November 2016, Worldwide hired Maria Diaz as its Director of Human Resources for its western region. Before Diaz, there was no human resources director at Worldwide's Los Angeles Airport location.

A.      *The Employee Complaints*

In November 2016 and January 2017, several employees whom Argueta supervised submitted written complaints to Worldwide about Argueta, accusing her of bullying, harassment, retaliation, yelling, making threats and other bad behavior, including discriminating against a pregnant subordinate. Although Argueta moved in limine to preclude admission of the substance of the complaints, the trial court not only allowed their admission but ruled that the entire text of the complaints could be admitted. So Argueta's attorneys preemptively asked Worldwide's Diaz to read the written complaints aloud to the jury.

Edwin Quinonez's complaint read: "First of all, decisions are being made based on politics and not productivity. Eunices is a manipulative individual and takes advantage of situations to advance her own profile. [¶] For example, she takes credit for other people's work to set herself up for a promotion. [¶] Second, she abuses her power as a lead. There ha[ve] been scenarios where we—the office agents have been threatened by her if we don't do things her way. She has threatened us with the following: either moving us to night shift, changing our hours, and our days off. . . . [¶] Also, this individual loves to create and spread rumors. With doing so, rumors in the workplace can lead to hurt feelings, conflict of interest among peers, tainting a

person's image, and is damaging to one's reputation, not to mention a hostile environment. [¶] Whether the rumor is true or not, the outcome of spreading it can be very damaging. As a lead, Eunices isn't supposed to make false statements; instead, she encourages it and supports such behavior."

Cynthia Rodriguez's complaint read: "I, Cynthia Rodriguez, have seen Eunices be rude to Asiana cargo agents. She leaves for long periods at a time, she gives orders to agents, and she sits in the back and starts using her phone while she keeps just making orders. She had even been disrespectful to our house agents. [¶] She has caused tension between me and China Eastern agents because of her overhearing a situation and telling the agents without her knowing what's really going on."

Wendy Sosa's complaint read: "HR Department, I am writing this letter to lodge a formal complaint against my lead, Eunices Argueta. I feel that I have been harassed and bullied by her. This has been going on for awhile now. I have lost my patience. She has been a very rude person to me and my coworkers. I feel that we cannot work in that type of environment. [¶] Eunices has threatened me to send me to the night to change my schedule, and now I have heard that she convinced Asian management to have me transferred from the airline to a different airline. This, to me, makes me feel that she has something against me. [¶] Eunices says I have an attitude but I have it when people provoke me like her, and I have not had attitude with no one else but her. [¶] Now I just came back from my baby bonding on Friday, January 26, 2017, and apparently she went ahead and told my coworkers that I went upstairs to HR and told Maria from HR department that there was a couple working here. What kind of person would dare to lie to my

4

coworkers and tell them lies and involve me in problems that I have no idea about? And this happened when I was out on baby bonding time. It seems like she wants us to have problems with each other. [¶] Another thing I want to mention is that when I was coming back from disability, Sonia asked me, on behalf of Dzung, if I want the opportunity to move accounting department to there. I got my hopes up. And when I did come back, I heard a rumor that Eunices played a big role in me not being able to get that position. [¶] It seems like she has a lot of envy toward me and others in the office, as if she can't or doesn't want to see others succeed or be happy because that's when she acts aggressive, rude, even destructive. I don't understand. I have never in my life met someone that will make lies and involve you into drama. [¶] Another thing, I have been scared to drive the flight since I started working, let alone when I was pregnant and I did not feel good going to the flight with the plane fumes smell and the plane stairs to be—to get documents. [¶] Eunices told me that I was not disabled, that I was just pregnant, and that she didn't care the fact that I was pregnant and didn't want me to take a chance and slip while going up the stairs and just that—that did not want me to risk my life and my baby's life. [¶] So I brought a doctor's note to HR last year, and Eunices made a big deal about it and told my coworkers that I just didn't want to go to the flight. At that time my coworkers got mad at me because they feel I just didn't want to go, but in reality, they understood that I was pregnant. [¶] My coworkers and I have had enough of her attitude and performance towards us. I really think she needs to stop treating us like animals, telling us what to do, and very bad . . . tone of voice and making us feel bad in front of coworkers and customers. [¶] . . . [¶] As soon as Sonia leaves the

5

office, she just starts to attack us. [¶] I hope this complaint from myself and coworkers that this issue get[s] resolved so we can have a productive, peaceful environment."

Diana Cortez's complaint read: "It has taken me a very long time to find the courage to lodge this formal complaint against lead agent Eunices Argueta.  She has been emotionally abusing many of us workers for a very long time, and we are all afraid to speak up, but we have all decided to try to put a stop to this. [¶] Even though multiple complaints have been made to HR in the past, seems like no action has been taken in regards to this matter. [¶] I am hoping that with someone new in charge of our human resources, some kind of consequences are applied so that this problem can finally come to an end. [¶] Eunices has a very impolite and aggressive way of speaking to others.  She shouts as she asks for things to be done and asks for things in a very impolite way, such as slamming papers on the desk.  And when she is mad, she begins to throw things around. [¶] She shows up to work in a bad mood some days, and those mornings are the worst because this is when she's extra rude and aggressive.  She likes to slam papers on her desk when asked us to finish something. [¶] One time I told her not to throw things at me and she said she can do whatever she want because she is a lead. [¶] Those mornings, she likes to purposely change our chores around and likes to yell at us.  I think this makes us feel like she is power and helps her relieve whatever anger she showed up to work with. [¶] We all feel very uncomfortable working in the environment.  She shouts through the intercom, and some of our warehouse workers have also had confrontations with her in the past about her rude behavior. [¶] Eunices has indeed threatened us by saying she will use her power and move us to swing shift if

6

we do not follow instructions. [¶] When I have confronted about rude behavior, she is quick to state that she is a lead and she can do whatever she desires and she does not need to . . . help out with operations if she does not wish to.  She says that regardless of how many drivers are waiting to be helped, she does not need to help us out if she does not want to because she is a lead. [¶] . . . She has disrespected all of us in front of our customers.  This kind of verbal and psychological abuse are not . . . conductive to a healthy atmosphere in the workplace and can impact our ability to complete the work effectively. [¶] . . . [¶] She sits on her desk and stays on her phone most of the time while we are doing all of the work.  She likes to take long lunches than the rest of us. . . . [¶] . . . [¶] She leaves unfinished work and tells us to finish it because she do not like to do that part.  If the phone rings and they are busy with, she will not pick up the phone, but yet, she's sitting there playing with her cell phone."

Urania Chavarria's complaint read: "As I reported to HR before, I continued to have issues with my lead, Eunices.  Ms. Eunices continues to belittle and disrespect me during work and in front of customers and my colleagues.  She continues to make me aware that she is a lead and she can do whatever she wants to do.  She continues to mistreat employees with her bad attitude communication skills. [¶] . . . [¶] On Monday, January 2nd, around 1:22, I stepped out of the office to make a private personal call.  As I came into the office, she began to yell at me with a loud and angry tone.  'Where were you?' and 'Next time you need to take a call, you need to let me know exactly where you are.' [¶] This is all going on in front of customers and employees.  She made it a point that she will disrespect me whenever she wants

and wherever she is and in front of whoever. I have never done anything to her for her to treat me this way."

B. *The Employee Complaint Investigation and the Sexual Harassment Allegations*

In January 2017, Diaz met with Argueta to discuss these complaints. Diaz testified she told Argueta that if her behavior did not improve, she would be terminated. Argueta gave a different account of the meeting, testifying she was not expressly threatened with termination.

In early May 2017, Chavarria became upset because she believed that Argueta picked up and ate almost all of the chocolate bar Chavarria had left on her desk, leaving only a tiny piece. Argueta claimed she broke off only a small piece. When her supervisor Flores questioned her about the chocolate, Argueta said she only took a little piece. Flores reviewed a surveillance video and accused Argueta of lying.

In her complaint, Argueta alleged Nguyen began sexually harassing her in 2016. On May 11, 2017, Nguyen placed Argueta "out of service" while the matter was investigated; this essentially meant she was placed on paid leave.

While Argueta was on leave, she consulted with a lawyer and, on May 15, 2017, the last scheduled day of her leave, she emailed a written complaint to Worldwide accusing Nguyen of sexually harassing her. She wrote that he "would state to close my eyes and he would feel on my face and shoulders in a way that gave me chills and discomfort. He would always come behind me when I was at my desk and grab my hand in a weird way. Call me words of affections like '[you're] my baby, that's why I love you, [you're] my sweet heart, [you're] my girl[.]' I have

8

text message[s] that have emojis that are not appropriate from a manager to a[n] employee."

Argueta subsequently claimed many more acts of harassment. She testified Nguyen would trip and fall into her which initially seemed like an accident but when it increased in frequency, it appeared deliberate because he tried to or did touch her, including her breasts. She would ask him, "what's going on?" He never stopped falling into her. He would give her back or shoulder rubs and ask her to rub his shoulders. Once he placed his hand on Argueta's thigh and rubbed it "up and down." She pushed his hand away "and told him to never touch [her] again."

Argueta told Nguyen to go away when he asked for a massage. In response, he would get mad, walk away and not talk to her the rest of the day. His silence impeded Argueta's ability to do her job because she needed him to overwrite entries in the system and he would ignore her.

He asked her to dinner three times and told her she could cook dinner for him. She rejected his invitation. At one point in 2017, he started hugging her, touching her face and hair, rubbing her back and she "could feel his body against [her]." He was kissing her forehead cheeks and eyelids. His hands were on her hair, face and back. His face was at her chest. She was "really shocked [and] scared." She pushed him away and told him to never touch her again. After collecting herself, she returned to work but could not concentrate. She started having attendance problems because she did not want to go to work and see Nguyen. She was counseled by her supervisor Flores for her tardiness and for leaving work early.

C.    *The Harassment Investigation*

Worldwide conducted an investigation of Argueta's complaint, although Argueta contends it was not thorough. First, Diaz met with Argueta. According to Diaz, Argueta told her that Nguyen came to her desk and grabbed her hand to use the computer mouse, pretended to trip and bump into her, and massaged her back and shoulders. According to Argueta, she told Diaz that Nguyen blocked her path, called her to his office and then touched her, would only help her if she let him touch her, would tell her to close her eyes and then kiss her on the eyelids, and ask to give her a hug.

Diaz, facility assistant general manager Javier Trujillo, and facility general manager John Oh then met with Nguyen. Nguyen admitted some but not all the acts Argueta alleged. The record cites provided by Argueta show that Nguyen admitted generally to patting female employees on the shoulder and using "pet names" for the women. Additionally, Nguyen admitted to saying "I love you" or "I love you girls." With regard to Argueta specifically, Nguyen admitted sending emojis in texts to her. Nguyen specifically admitted to telling Argueta to close her eyes and then touching her face to remove smeared make-up.[2] He also admitted to standing close to Argueta and putting his hand over hers on a mouse when she asked for help with computer issues. Argueta contends Nguyen admitted giving back rubs. The evidence is somewhat conflicting, but the letter sent from

---

[2]    Argueta claimed he kissed her.

Worldwide to Nguyen states that Nguyen admitted giving back rubs.[3]

Diaz also interviewed Argueta's supervisor, Flores. According to Diaz, Flores told her she did not observe anything. At some later point, Flores told her Nguyen was "handsy." Flores testified she told Diaz initially that Nguyen was "handsy" and gave as an example his placing his hand on hers on the mouse.

As a result of the investigation, Worldwide issued a "Letter of Concern" to Nguyen stating that Nguyen had admitted to some actions "that can easily be construed as sexual harassment" and "[t]his is a violation of our policy." Worldwide imposed a number of conditions on Nguyen's continued employment: undergo additional sexual harassment training; cease sending emojis to subordinates; use "appropriate language"; keep a minimum of three feet from employees; and not make any physical contact with an employee without their express permission.

When Argueta returned from leave in June 2017, she was transferred to a different floor and assigned to a different client; she worked for the client's manager and was supervised only by Trujillo. Her pay remained the same. There was conflicting evidence as to whether Argueta chose to move or whether this move was retaliation for her complaint against Nguyen.

---

[3] Assistant general manager Trujillo attempted to minimize Nguyen's admission, stating the term was ambiguous and could include pats on the shoulder; Trujillo then acknowledged Nguyen went further than that, by which Trujillo apparently meant shoulder massages. Diaz apparently understood Nguyen as admitting to the face touching and hand-on-mouse touching but not admitting any other physical touching of Argueta.

In February 2018, Argueta resigned from Worldwide. She stated she resigned because her new schedule was not compatible with her family responsibilities and her new position offered diminished potential to advance.

D.    *Subsequent Sexual Harassment by Nguyen*

In 2019, three female Worldwide employees made written complaints that Nguyen was sexually harassing them. Some of the actions occurred as far back as 2017. One of the complainants, Joy Faalata, had been identified by Argueta as a witness in 2017 but Worldwide had not interviewed her. Their complaints identified behavior similar to what Argueta had complained about: bumping into employees and then leaning into them, standing near them at their desks, and sometimes making physical contact by leaning into them or touching their hands on the mouse.

Worldwide's (new) local human resources manager for the Los Angeles Airport facility investigated the complaints and found Nguyen had violated Worldwide's sexual harassment policy and the conditions in the Letter of Concern. Worldwide terminated Nguyen in March 2019.

**DISCUSSION**

Argueta filed this action against Worldwide, alleging sexual harassment and retaliation in violation of the Fair Employment and Housing Act (FEHA), and failure to prevent both. As relevant to this appeal, Argueta claimed she resigned due to a hostile work environment. Such a claim requires proof that the acts of harassment were severe or pervasive. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283.) A hostile work environment has a subjective component, and "a

plaintiff who does not perceive the workplace as hostile or abusive will not prevail, even if it objectively is so." (*Id.* at p. 284.)

A.     *Employee Complaints About Argueta's Behavior Constituted Inadmissible Character Evidence and Prejudiced Appellant's Case.*

Argueta moved for a new trial in part based on the trial court's error in admitting the substance of the 2016 and 2017 employee complaints against her. The trial court treated this claim as a claim of an irregularity in the proceedings. A party is entitled to a new trial when an irregularity in the proceedings, or any order of the court or abuse of discretion, "materially affect[s] the substantial rights of such party" and prevents them from having a fair trial. (Code Civ. Proc., § 657(1).)

As a general matter, the denial of a motion for new trial is reviewed for abuse of discretion, with the appellate court making an independent determination as to whether any error was prejudicial. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 693-694.) However, "any determination underlying [the new trial] order is scrutinized under the test appropriate to such determination." (*Aguilar*, at p. 859.) The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Id.* at p. 609.)

13

In her motion in limine No. 2, Argueta sought to exclude the substance of the complaints made by other employees about her behavior. Argueta also sought to exclude the physical documents which reported the complaints. She did not seek to exclude the fact that complaints had been made.

The trial court's tentative ruling was that the substance of any complaint which had been communicated to Argueta would be admissible at trial, to show "the plaintiff's motive for making the complaints of sexual harassment." Specifically, the motive was that Argueta feared for her job because these complaints had been made against her. After hearing argument from both parties, the court ruled that Argueta "may be examined regarding the substance of the written complaints that were communicated to her . . . as relevant to motive. If any other portions are to be offered for any other purpose, i.e. impeachment, the defense needs to address the court outside the presence of the jury or for any other purpose, okay."

In a deposition taken after the court's ruling, Diaz testified that she read *all* the complaint letters to Argueta. Argueta's counsel asked the trial court to reconsider its ruling in light of this testimony, which greatly increased the amount of evidence on this topic, but the trial court declined to change its substantive ruling. As detailed above, Worldwide's Diaz read the entire contents of all the complaint letters to the jury.

The trial court gave a short limiting instruction when the complaints were read to the jury. In her motion for a new trial, Argueta contended that the trial court erred in admitting the substance of the "bad behavior" complaints against her because 1) the evidence was improper and irrelevant character evidence, 2) motive is not an element of a sexual harassment claim,

3) defendant would be strictly liable for any sexual harassment, and 4) defendant's HR person admitted Nguyen committed acts of sexual harassment and so made "motive" irrelevant. She also contended that even if the evidence had some minimal relevance, that relevance was far outweighed by its high potential for undue prejudice. Argueta further contended Worldwide counsel improperly used the evidence as bad character evidence in closing argument.

The trial court denied the new trial motion and found that its ruling "does not constitute an order that deprived Plaintiff of having a fair trial. Defendant submitted evidence that complaints made against Plaintiff amounted to evidence relating to what Defendant asserts was her actual motive for filing her complaint against Nguyen, and as such, were relevant to supporting Defendant's defenses, including that Plaintiff never complained about Nguyen's alleged conduct prior to filing the complaint because she never believed it to be severe or pervasive. (Opposition, pgs. 6-7.) In reply, Plaintiff argues that the character evidence of complaints made against Plaintiff has nothing to do with her harassment claim and motive is not an element of her harassment claim nor any defense thereto. (Reply, pgs. 7-8.) However, evidence that Plaintiff had alternative reasons for filing a sexual harassment complaint against Nguyen is relevant to whether Defendant's defense, that the harassment was not severe and/or pervasive, has merit. [¶] The Court finds that Defendant's use of the evidence relating to complaints made against Plaintiff did not amount to an irregularity in the proceedings that deprived Plaintiff from having a fair trial. Plaintiff argues that during closing argument Defendant's counsel raised Plaintiff's behavioral issues and at no

15

point did he tie them to her motive for complaining of sexual harassment and that this argument was merely to inflame the jury; however, this argument is not supported by the transcript. (Reply, pg. 8; citing, Decl. of Boxer, Exh . K 2/28/20 Transcript 95: 12-20.)  In his closing argument, Defendant's counsel discusses complaints lodged against Plaintiff as 'not good behavior" and thereafter argues that *because* of these complaints of bad behavior, in January 2017, Plaintiff knew her job was on the line. (Decl.  of Boxer, Exh. K, 2/28/20 Transcript, 95.)  Later in his closing argument, Defendant's counsel describes the timeline of Plaintiff meeting Nguyen, working with Nguyen, discipline by Nguyen and subsequent filing a complaint against him, which suggests the motive for filing the complaint was not because she found the [*sic*] Nguyen's alleged harassing conduct to be severe and pervasive, but because she wanted to retaliate for his punishing her.  (Decl. of Boxer, Exh. K, 2/28/20 Transcript, 112-113.)  The Court's admission of evidence of complaints against Plaintiff and Defendant's use of this evidence to demonstrate Plaintiff had alternative reasons for complaining about Nguyen, thereby suggesting that the harassment was not severe and pervasive, did not constitute an irregularity in the proceedings that deprived Plaintiff of her right to a fair trial."

Worldwide contends that Argueta simply repeats the arguments of her new trial motion on appeal, and this is not sufficient.  We find her arguments on appeal sufficient.  We agree with Argueta that the high potential for undue prejudice from admission of the substance of the complaints far outweighed the very minimal probative value of that evidence, and a limiting instruction would not be effective under the circumstances of this case.  Accordingly, we find the trial court abused its discretion in

admitting the substance of the complaints.  We independently assess the effect of this error and find it prejudicial: it materially affected appellant's substantial rights and prevented her from having a fair trial.

Although Argueta contends the evidence was not relevant because motive was not an element of any of her causes of action, this is too narrow a view of motive.  Motive need not be an element of a cause of action to be relevant or material.  This is particularly true where, as here, the motive provides a reason to lie or fabricate.  The law is clear that the credibility of a witness is always an issue for the trier of fact to decide and the trier of fact "may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing."  (Evid. Code, [4] § 780.)  The matters which may be considered expressly include "[t]he existence or nonexistence of a bias, interest, or other motive."  (*Id.*, subd. (f).)[5]

The fact that a number of employees complained about Argueta's behavior in November 2016 and January 2017, when taken together with Diaz's January 2017 warning that Argueta would be terminated if her behavior did not improve, the new complaint against Argueta in May 2017 about the chocolate bar and Argueta's meeting with a lawyer during the May 2017

---

[4]     Further undesignated statutory references are to the Evidence Code.

[5]     The jury was instructed on evaluating the credibility of witnesses with CACI No. 5003, which tells the jury to consider whether "the witness have any reason to say something that was not true?"

investigation of that complaint do support a reasonable inference that Argueta had a motive to fabricate her claim that Nguyen sexually harassed her, that is, to save her job.[6]

On these facts, the *substance* of the complaints against Argueta are irrelevant. Under Diaz's account of events, Argueta had every reason to fear that the May 2017 complaint against her, if substantiated, would result in her termination. Argueta, however, denied that Diaz told her she would be terminated if her behavior did not improve. Argueta testified that Diaz told her only that she would be written up. Thus, the substance of the complaints, and specifically the seriousness of the behavior described in the complaints, had some arguably minimal relevance in resolving this credibility dispute. It was also minimally relevant in assessing how worried Argueta may or may not have been about being fired, and thus whether she did in fact have a reason to fabricate her complaint against Nguyen. We note, however, that this relevance is extremely minimal in light of respondent's decision to put Argueta on paid leave while investigating the May 2017 chocolate bar incident, which action alone indicates that Argueta's job might be in jeopardy, regardless of whether Diaz had previously indicated Argueta's continued bad behavior would result in termination.

---

[6]     Argueta argues that she complained about Nguyen's behavior before the May 2017 chocolate bar incident. The record shows that Argueta did testify that she complained orally to Flores at some unspecified time in 2015, but Flores ignored her. She also testified that she complained to Nguyen directly. We do not find that these complaints undercut the probative value of the fact that Argueta did not make a formal written complaint to human resources until two years later, in May 2017, when her job was at risk.

Although the trial court's order denying the new trial motion also found the substance of the complaints relevant to show that Argueta was not actually offended by Nguyen's conduct and/or did not believe it was severe or pervasive, there was no discussion of this purpose in connection with the motion in limine. Worldwide has not pointed to any subsequent ruling by the trial court permitting admission of the evidence for this specific purpose. In her reply brief in support of her new trial motion, Argueta characterizes this as a "newly-minted" argument by Worldwide, in response to the new trial motion. Nevertheless, the trial court approved this purpose in its order denying the new trial motion.

We cannot agree with the trial court. The substance of the complaints was not relevant at all to assessing whether Argueta was offended by Nguyen's actual conduct or whether she did not perceive it as severe and pervasive or whether she had a motive to fabricate or embellish the severity or pervasiveness of Nguyen's conduct. If Diaz told Argueta she would be terminated if her behavior did not improve, that is the motive to lie.[7] The lies could involve outright fabrication of conduct or embellishment of actual conduct, i.e., its severity or pervasiveness. It could also involve claiming to be offended when she was not, or claiming she found the conduct severe and pervasive when she did not. The substance of the employee complaints sheds no light on which might have occurred. Relatedly, if Nguyen was responsible for disciplining Argueta for the May 2017 chocolate bar incident, that action would give

---

[7] Similarly, the formality of the investigation of Argueta, which itself indicated a strong possibility of a serious adverse consequence, would provide a motive to lie.

19

Argueta a motive to fabricate or embellish accusations against him, particularly given the potential consequences of the May 2017 incident. It would also give her a motive to claim she was offended when she was not. But again, the substance of the prior complaints against Argueta (that she was a bad boss and a bad person) does not shed any light on what form any deception might take, that is, whether it involved outright fabrication or embellishment of the severity of Nguyen's conduct, or fabrication of Argueta's own response.

Even when evidence is relevant, a trial court has discretion to exclude that evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Prejudice, under section 352, refers to " ' " " ' "evidence which uniquely tends to evoke an emotional bias against the [moving party] as an individual *and which has very little effect on the issues*." ' " ' " (*Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 150.) When the evidence at issue involves prior bad acts, substantial prejudice is inherent in the evidence and its admission requires "extremely careful analysis." The evidence should be examined pursuant to section 352. Generally, such evidence is admissible only if it has "substantial" probative value. (See *Brown v. Smith* (1997) 55 Cal.App.4th 767, 791 (*Brown*).)

Here, the employee complaints about appellant fit the quintessential definition of prejudice. The trial court failed to recognize that the evidence had a high potential for undue prejudice. It is, as Argueta contends, character evidence. The complaints show her as mean, rude, lazy, and dishonest. In this

context, the accusations of dishonesty are particularly prejudicial.  Sosa accused Argueta of two specific acts of dishonesty and more generally of lying to create drama.[8] Quinonez accused Argueta of lying to advance her career: "Eunices is a manipulative individual and takes advantage of situations to advance her own profile. [¶] For example, she takes credit for others people's work to set herself up for a promotion." Almost as troubling are the depictions of Argueta as someone who was capable of protecting her own interests.  Quinonez described Argueta as taking advantage of situations to advance herself.  Cortez described Argueta as "aggressive" and not afraid of confrontations.  Chavarria similarly described Argueta as confrontational.  All complainants described Argueta as rude. This paints a picture of a person who, to put it mildly, is not afraid to speak her mind.  This also has the potential to undermine Argueta's credibility in a different (and improper) way, by suggesting that she would not have been afraid to complain contemporaneously if someone were in fact harassing her.[9]

---

[8]     "What kind of person would dare to lie to my coworkers and tell them lies [about an HR visit to complain about other employees] and involve me in problems that I have no idea about?" and "I brought a doctor's note to HR last year [excusing me from going to the flight for health reasons], and Eunices made a big deal about it and told my coworkers that I just didn't want to go to the flight."

[9]     Although Worldwide made much of Argueta's delay in reporting Nguyen's harassment, such a delay has little to no probative value as to the truth of a victim's harassment claim. "[R]eporting sexual harassment can be difficult and there is no single reasonable response to sexual harassment.  For many

As mentioned above, the trial court gave a limiting instruction on this evidence, and such instructions can ameliorate section 352 prejudice. Indeed, they are generally considered effective. Limiting instructions are less effective, however, when there is little or no probative value to the evidence and it has a high potential for prejudice. (Cf. *Alexander v. Community Hospital of Long Beach* (2020) 46 Cal.App.5th 238, 259–261.) Further, limiting instructions are less effective when the evidence at issue is character evidence which goes to one of the main issues in the trial. (*People v. McKelvey* (1927) 85 Cal.App. 769, 771.) Here, Argueta's credibility was a key issue in the trial, as was the timing of her complaint about Nguyen's conduct.

In addition, because the trial court did not embrace the very narrow proper purpose of the evidence, it did not convey that limitation to the jury in the instructions. It simply and vaguely told the jury that "the complaints of other employees about Ms. Argueta are not being received for the truth of those complaints; rather, they are being received for the effect on Ms. Argueta when she was told about those complaints. You are not to consider whether the allegation in the complaints are true or not."[10] And, while the rule against hearsay required the court to inform the jury that the out-of-court statements could not be considered for the truth of their content, this only underscores

reasons, harassment victims may delay or refrain from reporting harassment. The costs of reporting can outweigh the benefits." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 586.)

[10] In the final jury instructions, the court simply told the jury: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

the lack of relevance of the substance of the complaints, and creates confusion. A false complaint would normally affect a person differently than a true one, so stating that the truth did not matter is confusing. Here, however, the truth or falsity of the substance of the complaints did not directly matter to Argueta, because the threat to her job came not from the complaints, but from Worldwide's reaction to the complaints, which was to impose a consequence on Argueta (although it was disputed what that consequence was).

After this limiting instruction was given, Argueta testified that when she was confronted by Diaz, she admitted the substance of the complaints. She stated that she was ashamed of herself and felt she should not have treated her subordinates like that.[11] Argueta offered expert testimony that she was behaving aberrantly during this period due to the stress of Nguyen's sexual harassment. Addressing the substance of the complaints was a tactical decision, but not one Argueta and her attorneys should have been forced to make. Even though it appears that much of the substance of the complaints was true, the jury should never have learned of that substance, which was not relevant to any issue in this action.

We agree with Argueta that counsel for Worldwide then seized upon the substance of the (admitted) complaints to argue that Argueta was a bad person, which undermined any marginal effectiveness of the limiting instruction. We cannot agree with

---

[11] Diaz gave contradictory testimony on this topic, first testifying that Argueta did not deny the allegations of the complaints. Then, after Argueta testified, Diaz testified that Argueta either denied the allegations or did not respond directly but laughed and giggled.

the trial court that counsel's closing argument about the substance of the complaints was proper, even under the trial court's erroneous assessment of the probative value of the substance of the complaints. In argument, Worldwide's attorney reminded the jury that Nguyen had testified that when he confronted Argueta about lying, she said, "If you complain about me, I'm going to come get you." This argument was certainly permissible. What followed was not. Worldwide's attorney then argued: "It's exactly what she did. [¶] And you know what? This is consistent, frankly, with who she is, because we heard from other employees that she supervised. Mr. Quinonez, for example, testified that she threatened him. She basically said, if you complain about me, I'm going to transfer you or I'll change your shift. Okay. And other employees said exactly the same thing. Mr. Quinonez said that started in 2014, happened, I think, three times or four times a year for the remainder of his employment. [¶] So when Mr. Nguyen testified that Ms. Argueta threatened him to come after him if he placed her out of service, well, that's entirely consistent with what she had done to others. Okay. [¶] And again, this isn't character assassination, this is just the truth. You're here to determine the truth."

This use of the substance of the complaints moves far beyond the limited purpose of showing how Argueta reacted to the complaints. Worldwide attorneys explicitly argued both that Argueta was a threatening person (her threats are "consistent with who she is") and that she was acting in conformity with the substance of the complaints that reported she threatened others (threatening Nguyen was "entirely consistent with what she had done to others").

"Evidence of traits of his character other than honesty or veracity, or their opposites, is inadmissible to attack or support the credibility of a witness." (§ 786.) Thus, even if Argueta were a threatening person, or a bully, that character trait would not be admissible to attack her credibility. Worldwide's attorneys should not have argued that "who she is" was evidence that she threatened Nguyen.

"[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).)[12] Thus, the fact that Argueta made threats on other occasions was not admissible to prove that she threatened Nguyen. Worldwide counsel should

[12] Section 1101 does permit the use of evidence of specific instances of conduct "to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).) In order to establish a common design or plan, however, " 'evidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' " (*Brown, supra*, 55 Cal.App.4th at p. 790.) " '[T]he common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.' " (*Id*. at pp. 790–791.) Argueta's complained-of behavior consists of a series of similar spontaneous acts, which do not have significant common features or suggest a general plan.

25

not have argued that threatening Nguyen was "entirely consistent with what she had done to others."

The conduct of Worldwide counsel making these arguments is particularly troubling in light of oral argument at the hearing on Argueta's motion in limine. Worldwide attorney Rosenthal stated that the trial court's ruling was "acceptable" as long as Worldwide could "reference the substance of them for all purposes, so impeachment, credibility, motive." He then added: "And I also think they would be admissible as character evidence." The court replied: "She did it once, she did it again, which is not—[¶] . . . [¶]—proper character evidence." Rosenthal then agreed with the court, stating: "No. I rescind that."

B.    *The Evidence Does Not Compel a Finding that Nguyen's Behavior was Severe or Pervasive as a Matter of Law*

Argueta filed a motion for judgment notwithstanding the verdict on the harassment claim and also contended in her motion for a new trial that there was insufficient evidence to support the jury's finding that the harassment was not severe or pervasive.

"Ordinarily, we review the denial of a motion for judgment notwithstanding the verdict for substantial evidence [citation] and the denial of a motion for new trial for abuse of discretion [citation]. But where, as here, ' "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' (*Sonic Manufacturing*

26

*Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 [126 Cal.Rptr.3d 301]; see *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319 [333, 278 Cal.Rptr.3d 688] [where ' " ' the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals,' " generally " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law' " '].)" (*SwiftAir, LLC v. Southwest Airlines Co.* (2022) 77 Cal.App.5th 46, 59 [motions involved a defense verdict].)

Here, the verdict at issue is a verdict for the defense, and such a verdict represents a conclusion that Argueta failed to meet her burden of proof at trial. Accordingly, we apply the standard set forth by our colleagues in Division 7 in *SwiftAir*.

On appeal, Argueta has acknowledged that Nguyen did not admit all of the acts she alleged. Further, even respondent's evidence of the nature and extent of Nguyen's admissions was contradictory. It is true, as Argueta points out, other female employees at Worldwide eventually complained that Nguyen committed acts of sexual harassment against them which were similar, if not identical, to acts which Argueta described but Nguyen did not admit. As Argueta recognizes, such evidence, committed outside her presence, is admissible to prove discriminatory intent and to impeach the harasser's credibility. (*Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 109–110.) Of course, such evidence does not compel a jury to find the harasser's denial not credible.

Thus, Argueta's case depended largely on her own testimony to establish severe or pervasive conduct by Nguyen. As we have discussed at length above, Argueta's credibility was

27

improperly undermined by the admission of the substance of the complaints against her. At the same time, there was properly admitted evidence which did provide her with a motive to fabricate to save her job. Thus, even if we were to disregard the improper evidence, we cannot say the record compels a finding in favor of Argueta as a matter of law that Nguyen's acts of harassment were severe or pervasive. Rather, a jury should be given the opportunity to evaluate Argueta's credibility, untainted by improper evidence.

To the extent Argueta contends that the severity or pervasiveness of Nguyen's acts was established as a matter of law by respondent's admission that Nguyen had violated their harassment policy, which includes the "severe or pervasive" standard of the FEHA, we agree with the trial court that the jury was not bound by any determination by respondent's representatives. The jury was required to evaluate the testimony of respondent's representatives relating to whether Nguyen violated respondent's policy and to independently decide whether Nguyen's conduct was severe or pervasive.

Argueta's reliance on *Fuentes v. Autozone, Inc.* (2011) 200 Cal.App.4th 1221 and *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31 to show severity or pervasiveness of the conduct in this case is inapt. Severity and pervasiveness are to be determined from the totality of the circumstances of a case. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 870.) Fuentes involved a sexual harassment claim, but the harassing conduct was far more egregious than the conduct here. (*Fuentes,* at p. 1234.) In *Caldera*, the harassing conduct involved mocking the plaintiff's

disability (stuttering), and so comparisons to this case are generally not helpful.  (*Caldera,* at pp. 266–267.)

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial.  Respondent to pay costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

I concur:


VIRAMONTES, J.

**GRIMES, J., Dissenting.**

I respectfully dissent.

I would affirm on the grounds that plaintiff in her opening brief did not provide a full and fair summary of the record and her opening brief presents the evidence in the light most favorable to plaintiff, which is insufficient to demonstrate trial court error and prejudice. I am not persuaded that the trial court abused its discretion in the admission of the substance of the employee complaints against plaintiff, but even if there were an abuse of discretion, plaintiff has not provided sufficient citation to the record and coherent argument to demonstrate prejudice. Nor has plaintiff demonstrated trial court error in the giving of the limiting instruction or prejudice from the instruction.

Plaintiff does not give a full and fair explanation of the proceedings that led to her counsel eliciting from Maria Diaz on direction examination the full text of the employee complaints, and that led to her counsel eliciting from plaintiff on direct examination that the complaints accurately described her behavior. Nor does plaintiff's opening brief describe all the other evidence from which the jury could conclude plaintiff was not a credible witness.

Appellant's opening brief says the substance of the complaints took 15 pages of reporter's transcript, which, in the context of the 18 volumes of reporter's transcripts of the proceedings of this lengthy jury trial, does not seem likely to have tainted the whole trial. Notably, this part of Ms. Diaz's testimony was followed by 11 more days of testimony from multiple witnesses, including plaintiff.

1

Plaintiff's testimony was discredited in a number of ways having nothing to do with the substance of the complaints against her.  By way of example, there was evidence, not mentioned by plaintiff, that she had earlier—before the employee complaints and before she complained about Dzung Nguyen's harassment—filed a complaint letter about other company agents breaking rules against supervisor relationships with employees.  She complained at length about a confrontation with an agent married to their Human Resources representative, and her letter stated she was "reaching headquarters[] to take action on all matters noted and if necessary will take these to a further level."  In my view, this and other evidence clearly demonstrated plaintiff, contrary to her testimony, would not have been afraid to complain contemporaneously if she thought someone was harassing her.

In sum, a reading of the entire transcript leads me to conclude the jury could easily decide the harassment was not severe or pervasive, and that any error in the admission of the substance of the employee complaints was not prejudicial.  I accordingly conclude the trial court did not err in finding there was substantial, credible evidence on both of the critical points: the harassment was not severe or pervasive, and there was no adverse employment action.


GRIMES, J.

Filed 12/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EUNICES ARGUETA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WORLDWIDE FLIGHT SERVICES, INC.,<br><br>    Defendant and Respondent. | B306910<br><br>(Los Angeles County<br>Super. Ct. No. BC703825)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter filed on November 8, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and is so ordered.

    There is no change in the judgment.

_____

STRATTON, P. J.          GRIMES, J.          VIRAMONTES, J.